```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/7/2011
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

FELESTATSIA G. MAWERE,                          :

              Plaintiff,                          :          09 Civ. 1342 (BSJ) (DF)

   -against-                                          :          **REPORT AND**
                                          **RECOMMENDATION**

CITCO FUND SERVICES, (USA) INC.,               :
HANIA ABROUS-McCARTHY, and
ANN FRECHETTE,                                        :

              Defendants.                        :

------------------------------------------------------------X

**TO THE HONORABLE BARBARA S. JONES, U.S.D.J.:**

      Before the Court is a motion (Dkt. 21) by Defendants Citco Fund Services, (USA) Inc.

("Citco"), Hania Abrous-McCarthy ("Abrous-McCarthy") and Ann Frechette ("Frechette")

(collectively, "Defendants") for an award of a portion of their attorneys' fees and costs against

plaintiff Felestatsia G. Mawere ("Plaintiff"). Specifically, Defendants seek: $2,211.50 for

attorneys' fees and filing fees associated with removing this case from state court; $22,883.75

for attorneys' fees and expenses associated with taking Plaintiff's deposition; $1,932.50 for

attorneys' fees associated with the preparation of a motion for summary judgment; and

attorneys' fees and costs associated with the present motion. For the following reasons, I

recommend that Defendants' motion be denied, without prejudice.

**BACKGROUND**

      On January 12, 2009, Plaintiff, through her prior counsel, Edward Wolf, Esq. ("Wolf"),

filed a verified complaint in the Supreme Court, State of New York, County of New York,

alleging discrimination by Defendants. (Affirmation of Michael DeLarco, Esq., dated Apr. 30,

2010 ("DeLarco Aff."), Ex. A.) Specifically, Plaintiff alleged discrimination and retaliation by

Defendants relating to her maternity leave, and asserted claims for violation of the Family Medical Leave Act ("FMLA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (including the Pregnancy Discrimination Act) ("Title VII"), the New York City Administrative Code, § 8-107 et seq. ("NYCAC"), and the New York State Executive Law ("NYSEL"), as well as claims for breach of contract and intentional infliction of emotional distress. (*Id.*)  In a summary at the beginning of her Verified Complaint, Plaintiff also listed a claim under 42 U.S.C. § 1983, although she did not then include such a claim in the more detailed recitals of her causes of action.

Defendants removed the action to this Court on February 12, 2009, pursuant to 28 U.S.C. § 1331. (Dkt. 1.) Defendants' counsel, Michael DeLarco, Esq. ("DeLarco"), claims that, in or about April of 2009, he informed Wolf that he believed Plaintiff's claims under the FMLA, Title VII, and Section 1983 to be untenable because, *inter alia*:  (1) Plaintiff had failed to file a charge with the Equal Employment Opportunity Commission ("EEOC") or its state equivalent, as required to maintain any claim under Title VII; (2) there was no evidence of discrimination or retaliation with respect to Plaintiff's Title VII and Section 1983 claims, as Plaintiff was terminated as part of an approximately 70 person layoff; (3) Plaintiff was not employed for at least one year before she took maternity leave, as required to maintain her FMLA claims; and (4) none of the Defendants were acting under color of state law, as required to maintain her Section 1983 claim. (DeLarco Aff., ¶ 10.) Wolf, however, contends that this conversation never took place. (Declaration of Rory J. Bellantoni, dated May 20, 2010 (Dkt. 27) ("Bellantoni Decl."), Ex. A.) On August 14, 2009, Plaintiff filed an Amended Complaint, adding claims under 42 U.S.C. § 1981 for discrimination on the basis of race and national origin. (Amended Complaint, dated Aug. 14, 2009 (Dkt. 10).)

2

Shortly before Plaintiff's deposition commenced on October 6, 2010, Plaintiff confirmed in a written interrogatory response that she had never filed a charge against Defendants with the EEOC or its state equivalent. (Reply Affirmation of Michael DeLarco, Esq., dated June 1, 2010 (Dkt. 30) ("DeLarco Reply Aff."), ¶ 40.) Moreover, during Plaintiff's deposition, taken over the course of four days (October 6, November 3, and December 3 and 7, 2009), Plaintiff testified, *inter alia*, that she had been employed for less than one year prior to commencing maternity leave, that she had previously filed an EEOC charge against a different former employer, and that none of the Defendants had made any explicitly race-based comments to her. (DeLarco Aff., Ex. , at 387, 462-63.) Following Plaintiff's deposition, DeLarco asserts that he again reached out to Wolf, pointing out his belief that Plaintiff's federal claims were "untenable" and should be dropped. (DeLarco Aff., ¶ 19.) Wolf denies that this conversation took place. (Bellantoni Decl., Ex. A.)

On December 30, 2009, the Court granted Plaintiff's request to substitute Rory J. Bellantoni, Esq. ("Bellantoni") for Wolf as her attorney. (Dkt. 17.) On January 12 and 13, 2010, Plaintiff took the depositions of Abrous-McCarty, Frechette, and two Citco representatives. The Court held a settlement conference on January 19, 2010. Shortly thereafter, Bellantoni sent a letter to DeLarco requesting that Defendants stipulate to the withdrawal of Plaintiff's claims under the FMLA, Title VII, Section 1983, and Section 1981, as well as her breach of contract claim, and to allow the remainder of Plaintiff's state-law claims to proceed in state court. (DeLarco Decl., Ex. F.) In that letter, Plaintiff conceded that: (1) she did not have a viable Title VII claim, as she had failed to file an EEOC Charge; (2) she did not have a viable Section 1981 claim, as there was no evidence of actions taken or words spoken by Defendants that could lead to a reasonable inference of discrimination on the basis of her race or national

3

origin; (3) she did not have a viable FMLA claim, as she was not employed for at least one year before she took maternity leave; and (4) she did not have a viable Section 1983 claim, as none of the Defendants were acting under color of state law, and that any such claim had been inadvertently included in her pleading. (*Id.*)

In a letter to the Court dated February 18, 2010,[1] Defendants requested that the February 19, 2010 deadline for the filing of summary judgment motions be extended to May 5, 2010, as the parties were still negotiating the terms of a stipulation to dismiss Plaintiff's federal claims. (Order (Mem. Endors.), dated Feb. 22, 2010 (Dkt. 19).) The Court granted an extension, but only to March 31, 2010. (*Id.*) According to Defendants' attorney billing records, Defendants' counsel began work on a motion for summary judgment on March 4, 2010. (DeLarco Reply Aff., ¶ 39, Ex. L.) On or about March 26, 2010, the parties finally filed a Stipulation and [Proposed] Order of Voluntary Dismissal Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), which was "so ordered" by the Court on April 1, 2010. (Dkt. 20 ("Stipulation and Order of Voluntary Dismissal").) The Stipulation and Order of Voluntary Dismissal provided for the dismissal of all of Plaintiff's claims with prejudice, except for her claims under state and local statutory law (*i.e.,* her claims under the NYSEL and the NYCAC), which could be re-filed in state court within three months. (*Id.*) The Stipulation and Order of Voluntary Dismissal further provided that this Court would "retain jurisdiction over this action so that Defendants may file within thirty (30) days from entry of this Order a motion for attorneys' fees, costs and sanctions relating to the filing of this action of the Complaint and Amended Complaint and the withdrawal of same." (*Id.*)

---

[1] Although the heading of the letter bears the date February 8, 2009, that appears to be a typographical error.

Defendants now seek a portion of their total fees and expenses incurred in this litigation. In particular, Defendants seek:

| | |
|---|---:|
| Attorneys' fees and filing fees associated with removal of case from state court to federal court | $ 2,211.50 |
| Attorneys' fees, transcription costs, and court reporter fees associated with taking Plaintiff's deposition | $22,883.75 |
| Attorneys' fees associated with preparation of Defendants' summary judgment motion | $ 1,932.50 |
| TOTAL | $27,027.75 |

(*See* DeLarco Reply Aff., at 6-9.)  Defendants also seek fees and costs incurred as a result of this motion.  (*Id.*)

## DISCUSSION

### I.   APPLICABLE LEGAL STANDARDS

As a threshold matter, the Court notes that Defendants are seeking fees only under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988; the Civil Rights Act of 1964, § 706(k), 42 U.S.C. § 2000e-5(k); and the Court's inherent authority.  (Defendants' Memorandum of Law in Support of Their Motion for Attorneys' Fees and Costs, dated April 30, 2010 (Dkt. 22) ("Def. Mem."), at 9.)  Defendants apparently did not avail themselves of the provisions of Rule 11 of the Federal Rules of Civil Procedure, which allows for sanctions where a party fails to withdraw frivolous claims within three weeks of being served with notice (in the form of a proposed, but not filed sanctions motion) that the party's claims are not warranted by law. *See* Fed. R. Civ. P. 11(c).

Under 42 U.S.C. § 1988, a court has discretion to award reasonable attorneys' fees to the prevailing party for claims brought pursuant to Sections 1981 and 1983; similarly, under

Section 2000e-5(k), a court may award fees to the prevailing party on a Title VII claim.[2]  A

defendant will be considered a "prevailing party" on such claims where, as here, the plaintiff's

claims have been dismissed voluntarily, with prejudice, and the defendant has expressly reserved

the right to seek fees and costs.  *See Nemeroff v. Abelson*, 620 F.2d 339, 350 (2d Cir. 1980)

(finding the defendant was a prevailing party where a voluntary stipulation and order to dismiss

the action with prejudice "expressly reserved to defendants the right to move for costs and

disbursements in this action").

      An award of attorneys' fees to a prevailing *defendant*, however, is only permissible under

Section 1988 and Section 2000e-5(k) if the court finds that the plaintiff's claim "was frivolous,

unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so."

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978); *Colombrito v. Kelly*, 764 F.2d

122, 128-129 (2d Cir. 1985) ("'The plaintiff's action must be meritless in the sense that it is

groundless or without foundation.'") (quoting *Hughes v. Rowe*, 449 U.S. 5, 14 (1980).  A

defendant need not prevail on all claims in a suit to be entitled to attorneys' fees; nevertheless,

the defendant is only entitled to attorneys' fees for work which can be traced to the plaintiff's

frivolous claims.  *See Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983).

      Bad faith on the part of the plaintiff is not a prerequisite for a fee award to defendants

under Sections 1988 and 2000e-5(k).  *See id.* at 422.  In contrast, an award of attorneys' fees

pursuant to the Court's inherent authority requires a showing that the party "has 'acted in bad

---

      [2] As Section 1988 and Section 2000e-5 are interpreted to impose an identical burden on
prevailing defendants seeking attorneys' fees, *Jenkins v. Eaton*, No. 08 Civ. 713 (NGG) (LB),
2010 WL 3861050, at n.6 (E.D.N.Y. Aug. 25, 2010) (Report & Recommendation) (citing
*Le-Blanc-Sternberg v. Fletcher*, 143 F.3d 748, 757 (2d Cir.1998)), *adopted by* 2010 WL
3842412 (E.D.N.Y. Sep 28, 2010), the Court has relied on cases interpreting these statutes
interchangeably.

6

faith, vexatiously, wantonly, or for oppressive reasons.'"  *Baker v. Urban Outfitters, Inc.*, 431 F.

Supp. 2d 351, 362-63 (S.D.N.Y. 2006) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46

(1991).

## II.    DEFENDANTS' MOTION

### A.    Claims Covered by Sections 1988 or 2000e-5(k)

In this case, Plaintiff arguably asserted three types of claims – under Title VII, Section

1981, and 1983 – that could be covered by the fee-shifting provisions of Sections 1988 or

2000e-5(k).

Plaintiffs' Title VII claims were plainly frivolous from the outset of this action.  Plaintiff

concedes that, as she never filed a charge with the EEOC, she did not have a viable Title VII

claim at the time her case was filed.  (*See* Memorandum of Law in Opposition to Defendants'

Motion for Attorneys' Fees and Costs, dated May 21, 2010 (Dkt. 28) ("Pl. Opp."), at 9.)

Plaintiff's claims under Section 1981 for discrimination based on race and national

origin, however, do not appear to have been frivolous when made.  Unlike a Title VII claim, a

Section 1981 claim does not require administrative exhaustion.  *See Brown v. Castleton State*

*College*, 663 F. Supp. 2d 392, 399 (D. Vt. 2009) (citing *Johnson v. Ry. Exp. Agency, Inc.*, 421

U.S. 454, 466 (1975)).  Moreover, Plaintiff, who identifies herself as being black and born in

Nigeria, explains that, at the time she asserted her claim, she believed that she had not been

given a chance to interview for a job that had been held by a white employee, and that she was

treated differently than white, American-born employees with respect to terms and conditions of

her employment relating to child care, the assignment of clerical duties, and the time frame in

which jobs were to be completed.  (*Id.* at 10.)  Even if, at the time she asserted her Section 1981

claims, there may have been some question as to whether the claims would ultimately survive,

Plaintiff's stated beliefs suggest that she had a reasonable basis for asserting claims of racial discrimination in the first instance. *See Svenningsen v. College of Staten Island*, No. 01 Civ. 7550 (SJ), 2003 WL 21143076, at *2 (E.D.N.Y. Mar. 28, 2003) (noting that comments "need not make any reference to the trait or condition on the basis of which the discrimination has occurred, so long as the incidents can reasonably be interpreted as having taken place on the basis of that trait or condition"); *Christiansburg Garment Co.*, 434 U.S. at 421-22 ("[I]t is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation."). Nonetheless, Plaintiff herself concedes that, following Defendants' depositions, she no longer had a reasonable basis for pursuing her Section 1981 claims. (*See* Pl. Opp., at 11.)

As to Plaintiff's Section 1983 claim, Plaintiff argues that this claim was inadvertently listed in the summary at the beginning of her Complaint. Although, as Defendants note, Section 1983 was included not only in the summary section of the original Verified Complaint, but also of the Amended Complaint, the parties do not appear to have expended resources litigating this claim and so its inclusion was of no import.

**B.     Plaintiff's FMLA Claims**

Defendants acknowledge that the fee-shifting provision applicable to FMLA claims only provides for attorneys' fees for prevailing plaintiffs, not prevailing defendants, 29 U.S.C. § 2617(a)(3) ("The court in such an action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant."), but argue that the Court should award fees in any event, under its inherent authority (Def. Mem., at 17).

Plaintiff's FMLA claim that she was denied appropriate maternity leave was groundless when made, in that Plaintiff had no right to seek leave under the statute, when she had not been employed by Defendants for at least a year prior to the date of the requested leave. 29 U.S.C. § 2611(2)(A). It is less clear, however, whether Plaintiff's claim of FMLA retaliation could have been viable. In this regard, Plaintiff contends that she suffered retaliation after complaining that her FMLA rights had been violated, and that, by the time of these later events, she had been employed for the requisite one-year period. (Pl. Opp., at 11.) It could reasonably be argued that retaliation against an employee for asserting an FMLA claim would violate the statute, even if the underlying claim itself lacked merit. Further, even if Plaintiff's retaliation claim could not ultimately stand, it would be difficult for the Court to conclude that Plaintiff asserted such a claim in bad faith.

### C.    Extent To Which Defendants Should Be Awarded Fees and Costs

As noted above, Defendants seek fees and costs associated with (1) the removal of this case from state court, (2) Plaintiff's deposition, (3) Defendants' planned summary judgment motion, and (4) the instant motion. These are addressed in turn:

### 1.    Removal

Defendants are not entitled to attorneys' fees and costs relating to their removal of this case to federal court. Removal was not required, as this case could have been litigated, in its entirety, in the state court. *See Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477-478 (1981) ("[S]tate courts may assume subject-matter jurisdiction over a federal cause of action absent provision by Congress to the contrary or disabling incompatibility between the federal claim and state-court adjudication."). Moreover, as discussed above, it is not readily apparent that Plaintiff's FMLA retaliation claim was frivolous as asserted. The Section 1981 claims that

9

Plaintiff added to her pleading by amendment were also not frivolous when made, and furnished an independent basis for this Court's subject matter jurisdiction.

### 2.  Plaintiff's Deposition

As discussed above, the Court perceives no basis for concluding that Plaintiff asserted her FMLA retaliation claim in bad faith.  Further, although Plaintiff was not eligible for FMLA leave, her seemingly misguided assertion that she was wrongfully denied such leave does not appear to rise to the level of vexatious, wanton, or oppressive litigation conduct necessary to support an award of fees and costs under the Court's inherent authority.  *See Baker*, 431 F. Supp. 2d at 362-63.  Accordingly, and in light of the apparent statutory policy against fee-shifting in favor of prevailing defendants in FMLA cases, I do not recommend that the Court exercise its inherent authority to award Defendants their fees and costs relating to deposing Plaintiff with regard to her FMLA claims.

To the extent Defendants seek an award under Sections 1988 and 2000e-5(k) for the fees and costs Defendants incurred in taking Plaintiff's deposition on her remaining federal claims, the Court looks to the time actually spent by Defendants in questioning Plaintiff on any such claims that were, at that time, "frivolous, unreasonable, or groundless." *Christiansburg Garment,* 434 U.S. at 422.  Based on the timing of Plaintiff's deposition (which predated the depositions of Defendants where it apparently became clear that Plaintiff could not prevail on her Section 1981 claims), and the fact that the parties did not actually litigate Plaintiff's Section 1983 claim, the only claims that could form the basis of a Section 1988 fee award would be Plaintiff's Title VII claims.

In connection with Plaintiff's deposition, Defendants request $22,883.75, representing approximately 40 percent of the total fees and costs associated with that four-day deposition.

10

(Def. Reply, at 8.)  Setting aside the question of whether there was good cause for the deposition to last four days (*see* Fed. R. Civ. P. 30(d)(1)), Defendants have not provided the Court with a transcript of the entire deposition, nor any other means to determine whether 40 percent of the deposition was actually devoted to inquiry into facts relevant to Plaintiffs' Title VII claims.  On the contrary, Defendants appear to argue that they should be compensated for the time spent inquiring into *any* of Plaintiff's federal claims (*see* Defs. Reply, at 7-8), a position that, for the reasons set forth above, cannot be justified.

Accordingly, I recommend that the Court deny Defendants' application for attorneys' fees and costs associated with Plaintiff's deposition, without prejudice to renew that application, upon a showing of the portion of that deposition that was reasonably related to Plaintiff's Title VII claims.[3]

### 3.    Summary Judgment Motion

Defendants seek an award of $1,932.50 for attorneys' fees incurred in connection with their preparation of a summary judgment motion, even though that motion was not ultimately filed.  Plaintiff acknowledges that, by the time discovery closed on January 13, 2011, she was aware that none of her federal claims could survive summary judgment.  She also knew or should have known that, if she did not withdraw those claims, Defendants would proceed to file a summary judgment motion by the Court-ordered deadline of March 31, 2010.  (*See* Dkt. 19.) Thus, Plaintiff should have been aware that, if a stipulation withdrawing her claims were not

---

[3] The mere fact that a line of questioning may have been relevant to *more* than just Plaintiff's Title VII claims would not prevent the incurred fees from being reimbursed under Section 2000e-5(k), as long as the questioning had some discernable bearing on those claims. *See Hensley,* 461 U.S. at 435.

11

finalized in advance of the March 31 date, Defendants would begin work on a motion. Yet the stipulation was not filed until March 26, 2011.

While Plaintiff suggests that Defendants were at least partially responsible for the delay in finalizing the parties' stipulation withdrawing Plaintiff's federal claims (*see* Bellantoni Decl., ¶ 7), the decision whether to proceed with those claims was ultimately in Plaintiff's hands. Further, the period of time between the close of discovery and the dispositive motion deadline was sufficiently long (two and a half months) that Plaintiff should have been able to take the necessary steps to withdraw her frivolous claims well before Defendants were forced to begin work on a motion. For these reasons, it would be appropriate for the Court to award to Defendants the reasonable attorneys' fees incurred in preparation of a motion for summary judgment dismissing Plaintiff's Title VII, Section 1981, and Section 1983 claims.[4]

Nonetheless, Defendants' submissions on the instant motion are insufficient to provide the Court with a reasoned basis for shifting to Plaintiff the fees at issue. It would appear from Defendants' reply papers – which include attorney time records relating to work on that motion – that the only work performed by counsel in support of the summary judgment motion was "legal research." (DeLarco Reply Decl., ¶ 34, Ex. L.) None of the submitted time entries, however, show the subject of that legal research. Thus, the Court is unable to discern whether the work performed related to Plaintiff's claims under Title VII, Section 1981 or Section 1983, the only

---

[4] For the same reasons stated above, this Court finds that Defendants have not met the more stringent standard required for the Court to exercise its inherent authority to award fees incurred in connection with preparing a motion for summary judgment dismissing FMLA claims, even if those claims would not have survived summary judgment.

claims for which Defendant could be entitled to fees under Sections 1988 or 2000e-5(k).[5]  If, to

the contrary, the research related only to Plaintiff's FMLA claims or to her state-law claims, then

fee shifting would be inappropriate.  *See Hensley*, 461 U.S. at 434-35; *see also* n.3, *supra*.

Accordingly, I recommend that Defendants' request for an award of attorneys' fees

associated with their anticipated summary judgment motion be denied, without prejudice to

renew this aspect of their motion, as well, upon a more specific showing that the legal research

counsel performed was particularly related to Plaintiff's claims under Title VII, Section 1981, or

Section 1983.[6]

### 4.    **Fees and Costs on the Instant Motion**

As I recommend the denial of Defendants' current motion, I also recommend that

Defendants' application for attorneys' fees and costs incurred in making this motion be denied,

without prejudice to renew, consistent with paragraphs 2 and 3, above.

---

[5] *See, e.g., Suchodolski Assocs., Inc. v. Cardell Fin. Corp.*, Nos. 03 Civ. 4148 (WHP), 2008 WL 5539688, at *2 (S.D.N.Y. Dec. 18, 2008) (noting that entries like "work on motion" are too vague to sufficiently document hours claimed); *Shannon v. Fireman's Fund Ins. Co.*, 156 F. Supp. 2d 279, 301 (S.D.N.Y. 2001) (time entries like "legal research," which do not indicate the subject matter of the work performed, "do not permit a thorough evaluation" of a fee application); *Local 32B-32J v. Port Auth.*, 180 F.R.D. 251, 253 (S.D.N.Y. 1998) (time entries indicating "research" were inadequate where there was "no indication of what topics were researched").

[6] Any such further showing should also demonstrate that the fees charged were reasonable for the work performed.  A fee award should not, for example, be based on a senior partner rate for basic legal research capable of being performed by a junior associate.  *See Patrolmen's Benevolent Assoc. of City of New York, Inc. v. City of New York*, No. 97 Civ.7895 (SAS), 2003 WL 21782675, at *4 (S.D.N.Y. July 31, 2003) (decreasing fee award where work performed by partners could have been delegated to associates).

## CONCLUSION

For the reasons set forth above, I recommend that Defendants' motion for an award of fees and costs (Dkt. 21) be denied, without prejudice to renew with respect to their requests for (a) attorneys' fees and costs incurred in conducting Plaintiffs' deposition, with respect to questioning related to her Title VII claims, (b) attorneys' fees incurred in performing summary judgment research relating to Plaintiff's Title VII, Section 1981, and Section 1983 claims, and (c) fees and costs incurred in connection with seeking the above.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have 14 days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Barbara S. Jones, United States Courthouse, 500 Pearl Street, Room 1050, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 40 Centre Street, Room 631, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir.

1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d

234, 237-38 (2d Cir. 1983).

Dated:   New York, New York
        February 7, 2011

                                    Respectfully submitted,

                                    _____
                                    DEBRA FREEMAN
                                    United States Magistrate Judge

Copies To:

The Honorable Barbara S. Jones

All parties (via ECF)