UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
FELESTATSIA G. MAWERE,                          :

                    Plaintiff,            :          09 Civ. 1342 (BSJ) (DF)

     -against-                               :          **REPORT AND**
                                             **RECOMMENDATION**
CITCO FUND SERVICES, (USA) INC.,                :
HANIA ABROUS-McCARTHY, and
ANN FRECHETTE,                                  :

                  Defendants.           :
------------------------------------------------------------X

**TO THE HONORABLE BARBARA S. JONES, U.S.D.J.:**

      Currently before the Court is a renewed attorneys' fees application (Dkt. 34) by

Defendants Citco Fund Services, (USA) Inc., Hania Abrous-McCarthy, and Ann Frechette

(collectively, "Defendants").  For the reasons set forth below, I recommend that Defendants'

renewed application be granted in part and denied in part, and that plaintiff Felestatsia G.

Mawere ("Plaintiff") be ordered to pay Defendants the sum of $29,547.50.

<u>BACKGROUND</u>

      As set forth in more detail in the Court's previous opinions in this case (*see* Dkts. 31, 33),

Plaintiff initially filed this employment discrimination action in the Supreme Court of the State

of New York, County of New York, alleging discrimination and retaliation by Defendants

relating to her maternity leave, and asserting claims for violations of the Family Medical Leave

Act ("FMLA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17

(including the Pregnancy Discrimination Act), the New York State Executive Law, and the New

York City Administrative Code, § 8-107 *et seq.,* as well as state-law claims for breach of

contract and intentional infliction of emotional distress.  (*See* Dkt. 1, Ex. 1.)  Defendants

removed the action to this Court, pursuant to 28 U.S.C. § 1331.  (Dkt. 1.)  Following discovery

and a settlement conference, the Court "So Ordered" a Stipulation and proposed Order of

Voluntary Dismissal submitted by the parties, dismissing all of Plaintiff's claims with prejudice,

except for her state and local statutory law claims, which, under the terms of the Stipulation and

Order, could be re-filed in state court within three months.  (Dkt. 20.)  The Stipulation and Order

also provided that the Court would retain jurisdiction over any motion for attorneys' fees, costs

and sanctions.  (*Id*.)

On April 30, 2010, Defendants filed a motion for attorneys' fees under the Civil Rights

Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988; the Civil Rights Act of 1964, § 706(k),

42 U.S.C. § 2000e-5(k); and the Court's inherent authority.  (*See* Defendants' Memorandum of

Law in Support of Their Motion for Attorneys' Fees and Costs, dated Apr. 30, 2010 (Dkt. 22), at

9.)  Arguing that all of Plaintiff's federal claims were frivolous as filed, Defendants requested:

$2,211.50 for attorneys' fees and filing fees associated with removing this case from state court;

$22,883.75 for attorneys' fees and expenses associated with taking Plaintiff's deposition;

$1,932.50 for attorneys' fees associated with the preparation of a motion for summary judgment;

and an unspecified amount for attorneys' fees associated with the fee application itself.  (*See*

*id.*)[1]

On March 1, 2011, the Court denied Defendants' attorneys' fees motion without

prejudice.  (Order, dated Mar. 1, 2011 (Dkt. 33) ("3/1/11 Order"), *adopting* Report and

Recommendation, dated Feb. 7, 2011 (Dkt. 31) ("2/7/11 Report").)  The Court found that, while

---

[1] The unspecified amount of fees incurred in the preparation of this fee application was
later calculated by Defendants to be $38,891.32, making the total award sought by Defendants
$65,919.07.  (*See* Affirmation of Michael DeLarco, Esq., dated July 11, 2011 (Dkt. 46) ("6/11/11
DeLarco Aff."), at ¶ 40.)

some of Plaintiff's federal claims were frivolous (either as filed or following certain discovery), others were not frivolous.  (2/7/11 Report, at 7-9.)  The Court thus held that Defendants were not entitled to fees incurred in removing the case to federal court.  (*Id*. at 9-10.)  As to Defendants' remaining requests for fees (relating to Plaintiff's deposition, preparing a motion for summary judgment, and preparing the fee application), the Court held that Defendants had failed to make a sufficient showing that those fees were specifically related to Plaintiff's frivolous claims, but that Defendants could renew their application for (1) attorneys' fees and costs associated with Plaintiff's deposition, limited to the portion of that deposition reasonably related to Plaintiff's Title VII claims; (2) attorneys' fees associated with Defendants' preparation of a motion for summary judgment, limited to the work counsel performed that was particularly related to Plaintiff's claims under Title VII, Section 1981, or Section 1983; and (3) attorneys' fees and costs associated with the fee application, in view of the Court's other rulings.  (*Id*. at 10-13.)

Now before the Court is Defendants' renewed application (Dkt. 34) for attorneys' fees and costs.  After two further rounds of briefing,[2] Defendants now seek only (1) $152.93 for attorneys' fees associated with taking Plaintiff's deposition (reduced from the $22,883.75 originally requested); (2) $1,495.00 for attorneys' fees associated with the preparation of their summary judgment motion (reduced from the $1,932.50 originally requested); and (3) in a new category, not previously identified, "at least $5,000" in attorneys' fees associated with

---

[2] After the parties completed their briefing on Defendants' renewed fee application, this Court asked for supplemental briefing in light of *Fox v. Vice*, 131 S. Ct. 2205 (2011), in which the Supreme Court clarified the governing standard for awarding fees to a defendant where only certain of the plaintiff's claims were found to have been frivolous.  Defendants provided that supplemental briefing (*see* Defendants' Memorandum of Law in Support of Their Motion for Attorneys' Fees and Costs Following *Fox v. Vice*, dated July 11, 2011 (Dkt. 45) ("Defs. Supp. Mem.")), as well as some updated billing records that the Court also requested (*see* Letter to the Court from DeLarco, dated Aug. 11, 2011 ("DeLarco Ltr.")).

conferences and mediation in this Court.  (*See* Defs. Supp. Mem.)  Yet, despite the fact that Defendants are thus now seeking less than $7,000 in fees with respect to their actual defense of Plaintiff's frivolous claims, Defendants are also seeking more than 10 times that amount – $71,584.97 – in "fees on fees," *i.e.,* the amount they claim to have spent (a) preparing their initial fee application ($38,891.32) (*see id.* at 4), and (b) preparing their renewed application and supplemental submission (an additional $32,693.65) (*see* DeLarco Ltr).

Defendants now also separately request costs associated with taking Plaintiff's deposition in the amount of $7,583.75, pursuant to Rule 54 of the Federal Rules of Civil Procedure (*see* Defs. Supp. Mem.*,* at 5 n.1), although Defendants did not make the usual application for taxable costs in accordance with the procedures set forth in Rule 54(d)(1) and Local Civil Rule 54.1(a).

Plaintiff opposes Defendants' application in its entirety, arguing that Defendants cannot satisfy the standard for an award of fees and that, in any event, the fees requested are unreasonable.  (*See* Plaintiff's Memorandum of Law in Further Opposition to Defendants' Fee Application in Light of *Fox v. Vice*, dated July 18, 2011 (Dkt. 47) ("Pl. Supp. Mem."); *see also* Declaration of Rory J. Bellantoni, Esq., dated Apr. 4, 2011 (Dkt. 38) ("Bellantoni Decl.").)

## DISCUSSION

## I.    APPLICABLE LEGAL STANDARDS

Under Section 1988, a court has discretion to award reasonable attorneys' fees to the prevailing party for claims brought pursuant to Sections 1981 and 1983; similarly, under 42 U.S.C. § 2000e-5(k), a court may award fees to the prevailing party on a Title VII claim.[3]  An

---

[3] As Section 1988 and Section 2000e-5 are interpreted to impose an identical burden on prevailing defendants seeking attorneys' fees, *Jenkins v. Eaton*, No. 08 Civ. 713 (NGG) (LB), 2010 WL 3861050, at *2 n.6 (E.D.N.Y. Aug. 25, 2010) (Report & Recommendation) (citing *Le-Blanc-Sternberg v. Fletcher*, 143 F.3d 748, 757 (2d Cir.1998)), *adopted by* 2010 WL

award of attorneys' fees to a prevailing *defendant*, however, is only permissible under these provisions if the court finds that the plaintiff's claim "was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978); *Colombrito v. Kelly*, 764 F.2d 122, 128-129 (2d Cir. 1985) ("'The plaintiff's action must be meritless in the sense that it is groundless or without foundation.'" (quoting *Hughes v. Rowe*, 449 U.S. 5, 14 (1980))).

A defendant need not prevail on all claims in a suit before being awarded attorneys' fees; nevertheless, as the Supreme Court has now made clear, the defendant may only recover attorneys' fees that were incurred "because of, but only because of, a frivolous claim" pursued by the plaintiff. *Fox*, 131 S. Ct. at 2215. In other words, a prevailing defendant is permitted "to receive only the portion of his fees that he would not have paid but for the frivolous claim." *Id.* For example, if "a defendant's attorney conducts a deposition on matters relevant to both a frivolous and a non-frivolous claim – and more, [if] that the lawyer would have taken and committed the same time to this deposition even if the case had involved only the non-frivolous allegation . . . [t]he defendant would have incurred the expense in any event; he has suffered no incremental harm from the frivolous claim," and, thus, is not entitled to those fees. *Id.*

At bottom, the dispositive question in awarding attorneys' fees to a prevailing defendant "is not whether attorney costs at all relate to a non-frivolous claim, but whether the costs would have been incurred in the absence of the frivolous allegation." *Id.* at 2216. In the removal context, this can theoretically mean that, if a "frivolous claim enables removal of the case to federal court, which in turn drives up litigation expenses . . . [the 'but for'] standard would

3842412 (E.D.N.Y. Sept. 28, 2010), the Court has cited, interchangeably, cases interpreting these statutes.

permit awarding fees for work relevant to both claims in order to reflect the increased costs (if any) of the federal forum." *Id.*

A district court also has discretion to determine the amount of attorneys' fees that would be appropriate to satisfy a fee award. *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983).  In determining appropriate fees, the court should begin by multiplying an attorney's reasonable hours for the work in question by a reasonable hourly rate for the services performed, so as to determine a "presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 493 F.3d 110, 118-21 (2d Cir. 2007).  The party seeking fees bears the burden of demonstrating that its requested fees are reasonable.  *See Blum v. Stenson,* 465 U.S. 886, 897 (1984); *Robinson v. City of New York*, No. 05 Civ. 9545 (GEL), 2009 WL 3109846, at *8 (S.D.N.Y. Sept. 29, 2009).  To that end, the fee application must be supported by contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1148 (2d Cir. 1983).

## II.     **DEFENDANTS' RENEWED FEE APPLICATION**

The Court has already found that Plaintiff's Section 1983 and Title VII claims were frivolous as filed, and that her Section 1981 claim was frivolous as of the close of discovery. (*See* 3/1/11 Order.)  Under the circumstances, some award of fees would be appropriate.   The question for the Court, however, is the amount of attorneys' fees reasonably incurred by Defendants because of Plaintiff's frivolous claims.

6

A.      **Reasonable Hourly Rates**

As an initial matter, Plaintiff challenges the reasonableness of the hourly rates charged by

Defendants' attorneys.  (*See* Bellantoni Decl., at ¶¶ 52-53.)  An attorney's hourly rate is

considered reasonable when it is "in line with those [rates] prevailing in the community for

similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Blum*,

465 U.S. at 895 n.11.  Generally, the relevant community is "the district in which the court sits,"

*Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994)

(internal quotation marks and citation omitted), although, sometimes, the legal market may be

defined otherwise, such as by "practice area," *Arbor Hill*, 493 F.3d at 120.  Further, the so-called

"*Johnson* factors"[4] and others should be considered by the Court in determining whether a

proposed hourly rate is reasonable in the particular circumstances presented.  *See Arbor Hill,* 493

F.3d at 112 (directing district courts, in determining reasonable hourly rate, to consider factors

such as "the complexity and difficulty of the case, the available expertise and capacity of the

client's other counsel (if any), the resources required to prosecute the case effectively . . . ,

whether the attorney had an interest (independent of that of his client) in achieving the ends of

the litigation or initiated the representation himself, whether the attorney was initially acting *pro*

*bono* . . ., and other returns (such as reputation, etc.) the attorney expected from the

---

[4] In *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), the court
identified 12 factors as relevant to determining reasonable attorneys' fees:  (1) the time and labor
required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the
legal service properly; (4) the preclusion of other employment by the attorney due to acceptance
of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations
imposed by the client or the circumstances; (8) the amount involved and the results obtained;
(9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case;
(11) the nature and length of the professional relationship with the client; and (12) awards in
similar cases.  *Id*. at 717-19 (quotation marks omitted), *abrogated on other grounds by
Blanchard v. Bergeron,* 489 U.S. 87, 92-93 (1989).

representation"); *see also id.* at 114 (listing the 12 *Johnson* factors).  Although the fee applicant

has the burden of demonstrating prevailing market rates for comparable work, *see Broome v.*

*Biondi*, Nos. 96 Civ. 0805, 96 Civ. 2262 (RLC), 1997 WL 691427, at *6 (S.D.N.Y. Nov. 4,

1997), the Court may also apply its "own knowledge" of rates charged in the community in

assessing the reasonableness of the rates sought, *Miele v. N.Y. State Teamsters Conference*

*Pension & Ret.,* 831 F.2d 407, 409 (2d Cir. 1987).

In *Arbor Hill,* the Second Circuit emphasized that the "reasonable hourly rate is the rate a

paying client would be willing to pay." *Arbor Hill*, 493 F.3d at 117-18.  In assessing whether an

hourly rate is reasonable, the Court should "bear in mind that a reasonable, paying client wishes

to spend the minimum necessary to litigate the case effectively."  *Id.* at 117-18.  When an

attorney's requested hourly rate is higher than rates found to be reasonable in the relevant

market, it is within the Court's discretion to reduce the requested rate.  *Savino v. Computer*

*Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).

In this case, Defendants seek to recover fees for work performed by three attorneys in the

New York City office of Hogan Lovells US LLP ("Hogan Lovells"), an international litigation

firm.  In particular, Defendants request hourly rates ranging (over time) from $697 to $775 for

Kenneth Kirschner, Esq. ("Kirschner"), a partner with 32 years of experience representing

companies and management in labor and employment matters; rates ranging from $535 to $595

for Michael DeLarco, Esq. ("DeLarco"), a senior associate with 10 years of labor and

employment experience; and rates ranging from $441 to $490 for Christine Wagner, Esq.

("Wagner"), a mid-level associate with five years of labor and employment experience.

Plaintiffs contend that these rates are unreasonably high in light of the simplicity of the case and

the lower rates often charged by attorneys in civil rights litigation (*see* Bellantoni Decl., at

¶¶ 52-53), but offer no case law or other evidence of the prevailing rates, in this district, for large-firm attorneys who are experienced defending corporate clients in employment discrimination actions.

Defendants, for their part, contend that the requested rates are generally in line with rates charged by attorneys at large firms in New York City.  (*See* Defs. Mem., at 7.)  In making this argument, however, Defendants rely on *In re Telik, Inc. Securities Litigation*, 576 F. Supp. 2d 570, 589-90 (S.D.N.Y. 2008), which approved fees charged by counsel in a securities class action.  *See id.* (approving partner-level work at a rate of $700 to $750 per hour and associate work at a rate of $300 to $550 per hour, after review of rates charged by New York law firms defending securities class actions).

In the employment/civil rights area, more judicial decisions seem to have been written regarding the reasonableness of the rates charged for such work by attorneys at small and mid-sized firms.  In that regard, "[c]onsistent precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time."  *Mugavero v. Arms Acres Inc.*, 03 Civ. 5724, 2010 WL 451045, at *5 (S.D.N.Y. Feb. 9, 2010).  The Second Circuit has explained that, in determining a reasonable hourly rate, courts may generally consider that hourly rates tend to be higher at large firms to compensate for higher overhead costs.  *See McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension*, 450 F.3d 91, 97 n.6 (2d Cir. 2006).  Nevertheless, it should be noted that the market rate for at least plaintiff-side civil rights litigation services is generally lower than the market rate for services provided to corporate clients, and thus the Court has often discounted the ordinary billable rates of large-firm attorneys representing plaintiffs in civil rights matters on

9

a *pro bono* basis.  *See, e.g., Heng Chan v. Sung Yue Tung Corp.*, No. 03-6048, 2007 WL

1373118, at *3 (S.D.N.Y. May 8, 2007) (explaining that, in a *pro bono* civil rights case, an

attorneys' fee award should be based on the rates that would have been charged by an attorney

specializing in civil rights litigation, not the rates the firm charged for corporate litigation);

*Morris v. Eversley*, 343 F. Supp. 2d 234, 247 (S.D.N.Y. 2004) (same).

Based on these factors, it would be reasonable to set the rates for Defendants' counsel,

for defending a corporate client in employment litigation, at the high end of rates referenced

above for attorneys practicing at small and mid-sized firms (*i.e.*, $250 to $600 per hour for

partners, and $200 to $350 per hour for associates).  Given his many years of experience, I

recommend that Kirschner's rate be reduced only slightly, from $675-$775 per hour to $650 per

hour, which would place him even somewhat above the upper end of such rates.  I recommend

that DeLarco's rate be reduced from $535-$595 per hour to $450 per hour, which, while higher

than the cited associate rates, would afford recognition to the fact that he brought 10 years of

experience to this case, making him more closely comparable to a junior partner.  Finally, I

recommend that Wagner's hourly rate be reduced from $441-$49 per hour to $350 per hour,

which would place her within, but at the high end of, the cited small and mid-sized firm

associate rates.[5]

---

[5] These modified rates would be in line with the billing rates reported in the 2010 *National Law Journal* Billing Survey for large firms identified by Hogan Lovells as peer firms that also perform "management employment law service."  (3/14/11 DeLarco Aff., at ¶¶ 44, 46, 49 and Ex. I.)  Defendants identified six such firms, three of which (Chadbourne & Parke, Greenberg Traurig, and Nixon Peabody) actually reported their rates in the survey.  (*See id.* at ¶ 44 and Ex. I.)  Based on the information made available for those firms in the survey, the Court calculates that the average billing rate for partners during the reporting period was $644 per hour, and the median partner rate was $663 per hour, and that the average billing rate for associates was $387 per hour, and the median associate rate was $400 per hour.  (*See id.*, Ex. I.)  Notably, all of these figures are lower than the rates sought by Hogan Lovells.  (*See* DeLarco Aff., at ¶¶ 14-40).

**B.**     **Reasonable Hours**

As explained above (*see supra* at Part I), in awarding attorneys' fees to a prevailing

defendant in a civil rights matter, the defendant may only be awarded those fees that were

incurred because of the frivolous claims pursued by the plaintiff.  *See Fox*, 131 S. Ct. at 2215.

Further, where the requested amount of fees is excessive because the number of stated hours is

greater than that which should have been required for the work produced, the Court should

reduce the stated hours accordingly.  *See Seitzman v. Sun Life Assurance Co. of Can.*, 311 F.3d

477, 487 (2d Cir. 2002) (the time component should not reflect excessive hours).  A reduction is

also appropriate where the proffered attorney time records are inadequate to enable the Court to

determine the reasonableness of the work performed or the time expended.  *See Hensley*, 461

U.S. at 433.  In determining whether an excessive amount of time was expended on the matter,

the Court may also consider the nature and quality of the work submitted by counsel in

connection with the litigation, *see Kirsch v. Fleet St. Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998); *In*

*re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987), as well as the degree of

counsel's success, *see Hensley*, 461 U.S. at 436.  Where an evaluation of every time entry is

impractical, the Court may apply percentage cuts "as a practical means of trimming fat" from the

application.  *Carey*, 711 F.2d at 1146.

As set forth above, Defendants seek attorneys' fees incurred in connection with (1) taking

Plaintiff's deposition; (2) preparing a motion for summary judgment; (3) various court

conferences and mediation; and (4) Defendants' original and renewed applications for attorneys'

fees and costs.  These are addressed in turn:

### 1.   Plaintiff's Deposition

Of the approximately 1,000 pages of transcripts resulting from Defendant's four-day

deposition of Plaintiff (*see* DeLarco Aff., Exs. A, D, E, F), Defendants are now able to identify

only four pages that, they contend, relate solely to Plaintiff's frivolous claims.  Not only is this

portion of the deposition (and the attorneys fees associated with it) *de minimis,* but the questions

actually posed on the cited pages appear to have been irrelevant to any claim or defense asserted

in the action.[6]  For these reasons, I recommend that Defendants not be awarded any fees in

connection with Plaintiff's deposition.

### 2.   Summary Judgment Motion

As for the preparation of Defendants' summary judgment motion, Defendants now seek

to recover for 2.6 hours billed by DeLarco, during which time he researched "the standard

applied by courts to Section 1981 claims, including whether courts apply the *McDonnell-*

*Douglas* burden shifting framework to such claims."  (3/14/11 DeLarco Aff., at ¶¶ 36-37

(referring to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see also* Defs. Supp.

Mem., at 3; 6/11/11 DeLarco Aff., at ¶ 6.)  This Court is persuaded that this limited research

---

[6] The questioning on these pages related to whether Plaintiff was aware that she was required to file a charge with the Equal Employment Opportunity Commission ("EEOC") in order to maintain a Title VII claim, but had failed to do so in this instance.  (*See* Defs. Supp. Mem., at 4-5 (citing 6/11/11 DeLarco Aff., at ¶ 5 (citing 3/14/11 DeLarco Aff., at ¶¶ 36-38)).) More specifically, by questioning Plaintiff regarding an EEOC charge that she had filed against a previous employer, it appears that counsel was attempting to develop an argument that Plaintiff knew of the administrative filing requirement and procedures, and therefore could not claim ignorance of them here.  (*See* 3/14/11 DeLarco Aff., Ex. E, at 604-07.)  Whether Plaintiff actually knew of the EEOC filing requirement, however, would not seem relevant to Defendants' defenses, as ignorance of the need to file an EEOC charge does not excuse a plaintiff's failure to do so.  *See Mazurkiewicz v. New York City Health & Hosps. Corp.*, 356 F. App'x 521, 522-23 (2d Cir. 2009) (holding that a plaintiff's alleged lack of knowledge of the EEOC is not sufficient to excuse his failure to file a timely EEOC charge).

would not have been undertaken, but for Plaintiff's continued pursuit of a Section 1981 claim that, by the date of Defendants' motion, Plaintiff knew had no merit.  (*See* 2/7/11 Report, at 11-13.)  Further, the number of hours expended in connection with this particular work appears reasonable.  I therefore recommend that, in connection with their summary judgment motion, Defendants' be awarded $1,170, calculated by multiplying 2.6 hours by a reasonable billable rate for DeLarco of $450 per hour (*see supra* at Part II(A)).

### 3.      Court Conferences

In supplemental briefing, Defendants now seek – for the first time – "at least $5,000 in fees" incurred preparing for and attending court conferences, including an in-person settlement conference held by the Court.  (Defs. Supp. Mem., at 5.)  Defendants argue that "the federal forum required court conferences and mediation that would not have been required in state court."  (*Id*. (citing *Fox*, 131 S. Ct. at 2216 (explaining that, where "the frivolous claim enables removal of the case to federal court, which in turn drives up litigation expenses . . . our standard would permit awarding fees for work relevant to both claims in order to reflect the increased costs (if any) of the federal forum").)

As an initial matter, Defendants have failed to submit any contemporaneous records in connection with this request.  This deficiency alone is reason to deny Defendants' request.  *See Lewis v. Coughlin*, 801 F.2d 570, 577 (2d Cir. 1986) (affirming district court's denial of fees due to attorneys' failure to submit contemporaneous records).  In any event, as this Court explained in initially recommending the denial of Defendants' request for fees incurred in removing this case to federal court, removal of the case was not required.  (*See* 2/7/11 Report, at 9-10.)  Further, it cannot be said that all of Plaintiff's federal claims were frivolous, and any non-frivolous claims would have furnished this Court with an independent basis for subject matter

13

jurisdiction (*see id.*), and would have provided an independent reason for the Court to hold case management conferences and a settlement conference. Thus, any increased cost of litigating in a federal forum was not solely the result of Plaintiff's frivolous claims. For this reason, I recommend that Defendants not be awarded attorneys' fees incurred in connection with court conferences.

### 4.   "Fees on Fees"

As explained in the Court's Report and Recommendation on Defendants' original fee application, a party that has been awarded attorneys' fees is generally entitled to recover the reasonable cost of making a fee application. (*See* 2/7/11 Report, at 13; *see also Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999) ("[A] reasonable fee should be awarded for time reasonably spent in preparing an application for . . . fees."); *Valley Disposal, Inc. v. Cent. Vt. Solid Waste Mgmt. Dist.*, 71 F.3d 1053, 1060 (2d Cir. 1995) (explaining that, "unless there are reasons to the contrary, motion costs should be granted whenever underlying costs are allowed").)

As a usual rule, the Court should "evaluate the costs of preparing the [fee] motion no differently from the costs of litigating the underlying case." *Valley Disposal, Inc.*, 71 F.3d at 1059. Thus, where a prevailing defendant seeks fees based on a plaintiff's pursuit of frivolous claims, the Court should consider a request for fees incurred in preparing the fee application under the *Fox* standard; *i.e.,* no fees should be awarded unless they were incurred solely as a result of the plaintiff's frivolous claims. It is also within the Court's discretion to deny or substantially reduce requested "fees on fees," where, in the Court's view, the amount requested is excessive. *See id.* ("The exercise of discretion . . . gives the [court] great leeway. If the fee claims are exorbitant or the time devoted to presenting them is unnecessarily high, the [court]

may refuse further compensation or grant it sparingly." (quoting *Gagne v. Maher,* 594 F.2d 336, 344 (2d Cir. 1979))).

In this case, the Court is confronted with a situation where over 90 percent of the fees being sought ($71,584.97 out of a total of $78,232.90) are attributable to the preparation of the original and renewed fee applications. Moreover, for the reasons set forth above, this Court has concluded that only $1,170 should be awarded with respect to actual defense costs, an amount that will plainly be dwarfed by any award of "fees on fees." Given the disproportionate amount of time and money that has now been spent litigating over fees themselves, this Court has closely scrutinized all of Defendants' briefing on their original and renewed fee applications, as well as the attorney billing records associated with Defendants' applications, and makes the following general observations:

First, although the Court did grant Defendants leave to renew their application for fees incurred in connection with preparing their fee application, the Court made it plain that any such renewed application should focus on the time spent addressing Plaintiff's *frivolous* claims. Defendants, however, again seek *all* of the fees incurred in making their original application. (*See* Defs. Supp. Mem., at 4.) Further, not only have Defendants made no effort to apportion their time, but counsel's billing entries are not sufficiently detailed for the Court to ascertain for itself how much time, in the initial briefing, was devoted to seeking fees on frivolous claims. (*See, e.g.*, 3/14/11 DeLarco Aff., at ¶¶ 39-41 and Ex. B.) At best, the Court might be able to make such an estimate based on the number of pages of Defendants' briefs addressed to particular claims; such a method of estimation, however, is inherently flawed, as the number of pages dedicated to an argument does not necessarily reflect the time required for its research and drafting. Indeed, Defendants may have spent significant time researching and drafting the

15

sections of their briefs that related to the claims that were *not* found by the Court to be frivolous, such as Plaintiff's FMLA retaliation claim, as those portions of Defendants' application may have been the most challenging for Defendants to argue.[7]

Second, if this Report and Recommendation is adopted, then Defendants will not have been entirely successful in the arguments they raised in their renewed fee application, as this Court has recommended denying fees incurred both in connection with Plaintiff's deposition and in attending court conferences. As to the latter point, this Court has found that the time spent in conferences was not solely attributable to the defense of Plaintiff's frivolous claims, and, thus, under *Fox*, the time spent by counsel preparing that portion of its submission should not be part of an award. Yet, as with Defendants' original fee application, counsel's billing records are again not sufficiently detailed to allow the Court to parse the time spent on the different portions of Defendants' supplemental briefing.

Third, the vagueness of counsel's billing records makes it impossible for the Court to determine, overall, whether the recorded time was appropriate or excessive. For example, while a few of counsel's time entries regarding legal research spell out the nature of the research performed,[8] a significant number of entries merely state "research" or "read cases," or refer vaguely to legal research regarding the "motion," the "federal claims," the "reply," the "renewed

---

[7] The Court also notes that, even if it were to try counting pages of Defendants' original moving brief in an effort to estimate the percentage of time that would not have been spent by counsel on the original fee application, but for Plaintiff's frivolous claims, the Court would be uncertain as to which pages to include in the count. Pages addressed specifically to frivolous claims, if taken as a percentage of Defendants' entire brief (including the Preliminary Statement and Statement of Facts) would yield one percentage, while those same pages, taken as a percentage of the "Argument" section, would yield another.

[8] *See, e.g.*, time entries dated Apr. 27, 2011 ("research FRCP Rule 54 for motion"); and Mar. 7, 2011 ("review legal research on customary and reasonable rates for fee motion").

motion for attorneys' fees," or the "reply memorandum of law."[9]  These types of time entries are inadequate to enable the Court to determine what issues, in particular, the attorneys were researching, much less whether the expended time was reasonable for the work performed.  *See, e.g.*, *Vishipco Line v. Charles Schwab & Co.,* Nos. 02 Civ. 7823, 7846, 7877, 7915, 7928, 7929 (SHS), 2003 WL 1936142, at * 2 (S.D.N.Y. Apr. 23, 2003) (time entries such as "legal research" too vague to allow court to determine reasonableness of time expended); *Shannon v. Fireman's Fund Ins. Co.*, 156 F. Supp. 2d 279, 301 (S.D.N.Y. 2001) (time entries such as "legal research," which do not indicate the subject matter of the work performed, "do not permit a thorough evaluation"); *TM Park Ave. Assocs. v. Pataki,* 44 F. Supp. 2d 158, 169 (S.D.N.Y. 1999) (time entries "are not sufficiently detailed" where they "merely state 'research'"), *vacated on other grounds*, 214 F.3d 344 (2d Cir. 2000); *Local 32B-32J v. Port Auth.*, 180 F.R.D. 251, 253 (S.D.N.Y. 1998) (time entries indicating "research" were inadequate where there was "no indication of what topics were researched"); *Clarendon Nat'l Ins. Co. v. Compuplan, LLC*, No. 03 Civ 7966 (LAP) (KNF), 2006 U.S. Dist. LEXIS 88161, at *20 (S.D.N.Y. Dec. 5, 2006) (time entries such as "draft documents" failed to describe adequately the work performed).

Fourth, compounding the problem of vague entries is the fact that the Defendants' counsel frequently used a practice known as "block billing," by which they listed the total number of hours they each spent working on various tasks on a particular day, without breaking

---

[9] *See, e.g.*, time entries dated Apr. 25, 2010 ("research issues on federal claims"), Apr. 27, 2010 ("research for and revise motion for attorneys' fees"); Apr. 28, 2010 ("review legal research"); Apr. 29, 2010 ("legal research for motion"); May 21, 2010 ("review cases"), May 24, 2010 ("research"); May 27, 2010 ("finish conducting research for and drafting reply on motion for attorneys' fees"); Mar. 8, 2011 ("continue conducting research for and drafting renewed motion for attorneys' fees"); and Apr. 16, 2011 ("read cases").

out the hours spent on each individual task.[10]  While the practice of block billing "is not

prohibited in this Circuit," *Rodriguez v. McLoughlin,* 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999);

*see also, e.g.*, *Hutchinson v. McCabee,* No. 95 Civ. 5449 (JFK), 2002 WL 930842, at *4

(S.D.N.Y. Aug. 15, 2001) (granting fees based on "lumped" time entries that did not require

different rates of payment), it is particularly difficult for the Court to evaluate whether time spent

on a given task was excessive where the attorney has grouped different tasks together in a single

time entry.  Thus, at times, the Court has reduced or even disallowed requested attorneys' fees

where the supporting time records were not broken out with sufficient detail to enable it to

determine the reasonableness of the time spent on particular tasks.  *See Green v. City of New

York*, 403 F. App'x 626, 630 (2d Cir. 2010) (affirming district court's application of hours

reduction due to pervasive block billing in time entries submitted by counsel and concluding that

the practice raised questions regarding the reasonableness of the entries); *Reiter v. Metro.

Transp. Auth. of the State of N.Y.*, No. 01 Civ. 2762 (GWG), 2007 WL 2775144, at **15-16

(S.D.N.Y. Sept. 25, 2007) (applying reduction to attorney's fees for a number of reasons,

including the use of "block billing," which made it impossible for the Court to determine if the

work involved compensable or non-compensable tasks); *Soler v. G&U, Inc.*, 801 F. Supp. 1056,

1061-62 (S.D.N.Y. 1992) (excluding from lodestar calculation all time entries with commingled

activities); *Williams v. N.Y. City Hous. Auth.*, 975 F. Supp. 317, 327 (S.D.N.Y. 1997) ("It is not

the court's job to decipher time entries and guess how much time each activity took . . .  It is the

---

[10] *See, e.g.*, time entry dated Apr. 27, 2010 ("Draft affirmation for motion for costs, revise
same; review invoices for attorneys' fees motion; revise memorandum of law; draft notice of
motion; research FRCP Rule motion").

responsibility of the applicant to make separate time entries for each activity.") (internal quotation marks and citation omitted).

Most typically, when submitted time records do not provide descriptions sufficiently detailed to enable the Court to determine the reasonableness of the expended time, courts in this Circuit have applied a percentage reduction – frequently in the range of 20 to 30 percent – to the claimed attorney hours.  *See, e.g.*, *Kirsch*, 148 F.3d at 173 (affirming 20 percent fee reduction for vagueness and other deficiencies in attorney billing records); *Terminate Control Corp. v. Nu-Life Constr. Corp.,* 28 F.3d 1335, 1342-43 (2d Cir. 1994) (30 percent fee reduction for "lack of specific record keeping" was within the district court's discretion); *see also Trs. of the Bricklayers & Allied Craftworkers Local 5 N.Y. Ret. v. Helmer-Cronin Constr.*, No. 03 Civ. 0748 (MDF), 2005 WL 3789085, at *5 (S.D.N.Y. Oct. 24, 2005) (20 percent reduction for vague entries that "fail to adequately describe the nature of the work performed"); *Mr. & Mrs. B. v. Weston Bd. of Educ.*, 34 F. Supp. 2d 777, 782 (D. Conn. 1999) (30 percent reduction where vague and compound time entries did not permit the court to determine the reasonableness of the time expended).  Here, not only are most of Defendants' attorneys' records vague, either because of inadequate descriptions, block billing, or both, but the submitted records cannot be adequately reviewed for the additional reasons explained above.

Given that the Second Circuit has explained that "fees on fees" should generally be awarded, so as not to "dilute the value of a fees award by forcing attorneys into extensive, uncompensated litigation in order to gain any fees," *Gagne*, 594 F.2d at 344, I recommend that Defendants' be granted an award for some of their time for preparing their fee applications.  For the several reasons discussed above, however, and because of the grossly disproportionate nature of counsel's time spent preparing its fee applications (as compared to its time spent defending

19

against Plaintiffs' frivolous claims), I recommend that the Court exercise its discretion to reduce significantly the attorney time charged to the fee applications. More specifically, I recommend a 50 percent reduction in the claimed hours, which, by applying the adjusted billing rates set out above, would result in $28,377.50 in fees, as follows:

| **Attorney** | | **Hours** | | **Rate** | | **Amount** |
|---|---|---|---|---|---|---|
| Kirschner: | 24.7 hours, less 50% = | 12.35 hours | x | $650/hr | = | $ 8,027.50 |
| DeLarco: | 45.8 hours, less 50% = | 22.9 hours | x | $450/hr | = | $10,305.00 |
| Wagner: | 57.4 hours, less 50% = | 28.7 hours | x | $350/hr | = | $10,045.00 |
| | | | | | **Total:** | **$28,377.50** |

### C.      Deposition Costs

Defendants now also assert, in a footnote, that, pursuant to Rule 54 of the Federal Rules of Civil Procedure, they are entitled to $7,538.75 in costs associated with taking Plaintiff's deposition.[11] (*See id.* at 5 n.1.) Based on a review of the docket, Defendants have failed to make an application to the Clerk of Court for costs within 30 days of judgment. *See* Local Civ. R. 54.1(a) (setting out the procedure for requesting costs). While the Court has discretion to waive the procedural requirements of Local Rule 54.1(a) to avoid "an injustice," *Barrett v. United*

---

[11] "[C]osts [are] appropriately imposed under Rule 54 where the parties had stipulated to a dismissal in which the defendants expressly reserved the right to move for costs." *Surprise v. GTE Serv. Corp.*, 202 F.R.D. 79, 81 (D. Conn. 2000) (citing *Nemeroff v. Abelson*, 620 F.2d 339, 350 (2d Cir.1980)); *see also* Stipulation and Order of Voluntary Dismissal, dated Apr. 1, 2010 (Dkt. 20) (providing that the Court would "retain jurisdiction over this action so that Defendants may file within thirty (30) days from entry of this Order a motion for attorneys' fees, costs and sanctions relating to the filing of this action of the Complaint and Amended Complaint and the withdrawal of same").

*States*, Nos. 76 Civ. 381 (CBM), 76 Civ. 1061 (CBM), 1991 WL 143738, at *2 (S.D.N.Y.

July 23, 1991), such a waiver would not be appropriate in this case.

Although, as explained in this Court's Report and Recommendation on Defendants'

original fee application, Defendants are the prevailing parties with respect to Plaintiff's federal

claims, which were dismissed with prejudice (*see* 2/7/11 Report, at 5-6), Defendants cannot be

considered the prevailing parties with respect to her state law claims, which were dismissed

without prejudice to refile in state court.  *Cf. Dattner v. Conagra Foods, Inc.*, 458 F.3d 98, 103

(2d Cir. 2006) (finding that the defendant was not a "prevailing party" under Rule 54(d) where

the plaintiff's claims were dismissed on the ground of *forum non conveniens*, because the

plaintiff was free to pursue those claims in another forum and "it remain[ed] to be seen" which

party would prevail).  As Plaintiff's deposition testimony is relevant to her state law claims, and

as it remains to be seen which party will prevail on the merits on those claims, denying

Defendants leave to proceed with an untimely Rule 54 cost application cannot be considered "an

injustice."  On the contrary, given the presumed pendency of state court litigation, denial of

Defendants' requested deposition costs would be the just result.

Accordingly, I recommend that Defendants request for deposition costs be denied.

## **CONCLUSION**

For the reasons set forth above, I recommend that Defendants' renewed application

(Dkt. 34) for attorneys' fees and costs be granted in part and denied in part.  Specifically, I

recommend that Plaintiff be ordered to pay Defendants a total of **$29,547.50** in attorneys' fees,

representing $1,170 in fees incurred in connection with Defendants' summary judgment motion,

plus $28,377.50 in fees incurred in connection with Defendants' original and renewed fee

applications, and that Defendants' application for fees and costs be otherwise denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have 14 days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Barbara S. Jones, United States Courthouse, 500 Pearl Street, Room 1920, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Jones.  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:  New York, New York
        September 16, 2011

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

Copies To:

The Honorable Barbara S. Jones, U.S.D.J.

All parties (via ECF)

22